STATE OF NEBRASKA, APPELLEE, V. PAMELA K. LAST, APPELLANT.

324 N.W.2d 402

Filed September 24, 1982.   No. 81-719.

Dennis R. Keefe, Lancaster County Public Defender, and Dorothy A. Walker, for appellant.

Paul L. Douglas, Attorney General, and G. Roderic Anderson, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

The appellant, Pamela K. Last (Last), appeals from a judgment and conviction finding her guilty of the offense of attempted robbery in violation of Neb. Rev. Stat. §§ 28-324(1) and 28-201(b) (Reissue 1979). Attempted robbery is a Class III felony punishable by imprisonment of not less than 1 year nor more than 20 years, or a fine of not to exceed $25,000, or both a fine and imprisonment. Last was sentenced by the court to imprisonment for a period of 18 months. We affirm.

The charge of attempted robbery filed against Last arose out of the attempted robbery of Thomas Jelsma by Larry Harris in front of Mr. Jelsma's residence in Lincoln, Nebraska, at about 1:30 a.m. on October 11, 1980. During the course of the attempted robbery Harris was fatally wounded by Jelsma. Prior to the attempted robbery a light-colored sedan-type automobile was observed by Jelsma parked in the neighborhood. After Jelsma shot Harris, he observed this vehicle leave the area but he was unable to identify the driver. Subsequently, a 1969 white Dodge four-door vehicle was located parked approximately 2 blocks from the attempted robbery scene. Among the items found in the vehicle was a purse containing identification items belonging to Last. Further investigation re-

vealed that the owner of the vehicle had loaned the vehicle to Last sometime during the month of September 1980. The owner was aware at the time that Last was acquainted with Harris and, further, had personal knowledge that on several occasions Harris had driven the vehicle without Last.

Several employees of the Lincoln Police Department, including Det. Allen F. Soukup, were assigned to investigate Last's possible involvement in the attempted robbery. Soukup had been acquainted with Last for some 10 years.

On October 11, 1980, Soukup had three conversations with Last with respect to her possible involvement in the attempted robbery. The first conversation occurred when Soukup, along with four other officers, went to Last's apartment. Prior to interrogating Last, Soukup advised her of her rights by reading to her the standard *Miranda* card, to which she responded affirmatively to each question. Upon request, Last voluntarily consented to a search of her apartment and a search of her own automobile, which was parked behind her apartment. When questioned by Soukup as to whether she knew Larry Harris, Last responded "yes, he's been living here." When Soukup advised Last that he would have to take her to police headquarters for further questioning, she voluntarily went with the officer.

During the second interrogation, which occurred at police headquarters, Soukup urged Last to tell him the truth concerning what she knew about the attempted robbery. Soukup concedes that he told Last if she was not involved in the attempted robbery she would be free to leave. Last asked to speak to an attorney and Soukup permitted her to do so. Following a call to her attorney no further interrogation between Soukup and Last took place.

Following Last's call to her attorney Soukup and Last went to a room located at police headquarters containing vending machines. Soukup purchased

something for Last to eat. Without any inducement by Soukup, nor in response to any question by Soukup, Last voluntarily said to Soukup, "I didn't panic after the shots were fired, I simply drove away and parked the vehicle a couple blocks away and walked back to see if I could help Larry or if Larry was hurt." Further questions were then asked of Last by Soukup. The trial court suppressed all the answers given by Last in response to questions propounded to her by Soukup following her outburst, and admitted in evidence only the unsolicited voluntary statement of Last. The other statements are not in issue in this appeal.

Last was then charged with the crime of attempted robbery. The complaint in the county court, upon which Last was arraigned, and the information filed in the District Court, upon which trial commenced, provided in material part as follows: "[T]hat Pamela K. Last, on or about the 11th day of October, A.D., 1980 in the County of Lancaster, and the State, aforesaid, then and there being, did contrary to the form of the statutes in such cases made and provided intentionally engage in conduct which, under the circumstances as she believed them to be, constituted a substantial step in a course of conduct intended to culminate in her commission of the crime of *robbery,* to-wit: did attempt forcibly and by violence or by putting in fear to take from the person of Tommy Jelsma money or personal property of any value whatever." (Emphasis supplied.) On May 21, 1981, that being the third day of trial, the State moved, over the objection of Last, to amend the information to add the words "with intent to steal."

Last now assigns as a basis for reversal a number of errors which can be reduced to three categories. The first assignment is that the trial court erred in not quashing the original information on the basis that it failed to include an essential element of the

crime charged. The second assignment of error is that the trial court erred in failing to quash the statement made by Last to Soukup in the vending machine area at police headquarters. The third assignment of error is that the trial court abused its discretion in sentencing Last to 18 months' imprisonment rather than placing her on probation.

Turning first to the contention that the information as originally filed was defective and that it was error to permit the State to amend, we believe the assignment should be overruled.

Last's argument in this regard is based upon her contention that by omitting the words "with intent to steal" from the information, the information failed to allege a crime and therefore was fatally defective. The information, however, did specifically charge Last with the crime of "attempted robbery." There is only one crime of robbery under the Nebraska Criminal Code and it is found at § 28-324. The statute provides as follows: "A person commits robbery if, with the intent to steal, he forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever." Under the Nebraska definition of robbery, "with intent to steal" is indeed a necessary element which the State was obligated to prove. By alleging that Last had attempted to commit the crime of robbery, as defined by statute, the information of necessity included all the elements of the crime of robbery. Under the Nebraska Criminal Code, the use of the word "robbery" in an information by definition includes the element "with intent to steal," and, in effect, the information was sufficient when it charged Last with attempting to commit the crime of "robbery."

The purpose of requiring that the information set out the charge in a particular manner is twofold. As we noted in *State v. Adams,* 181 Neb. 75, 78, 147 N.W.2d 144, 148-49 (1966): "An information or in-

dictment must inform the accused, with reasonable certainty, of the charge being made against him in order that he may prepare his defense thereto and also be able to plead the judgment rendered thereon as a bar to later prosecution for the same offense." See, also, *State v. Buttner,* 180 Neb. 529, 143 N.W.2d 907 (1966). And while it is generally sufficient to allege the crime in the language of the statute, it is not necessary to state the detailed particulars of the crime in the meticulous manner prescribed by the common law. See *Cowan v. State,* 140 Neb. 837, 2 N.W.2d 111 (1942). In the instant case, while the information did not detail all the elements making up the crime of robbery, the statute defined the elements by providing that the word "robbery" meant taking money or personal property of any value from another when the taking was forcible or by violence or by putting in fear and with the intent to steal. While there may be sections of the Nebraska Criminal Code which would require a more definite statement in order to more fully advise the accused of the nature of the crime, robbery is not one of them. By charging Last with attempted robbery, the State obligated itself to prove beyond a reasonable doubt all the necessary elements of § 28-324, including the fact that there was an intent to steal. Adding the words "with intent to steal" did not change the offense from that which had been charged and does not entitle Last to a reversal of her conviction.

In *State v. Gascoigen,* 191 Neb. 15, 19-20, 213 N.W.2d 452, 455 (1973), we noted: "The determinative fact here is that there was no prejudice to the substantial rights of the defendant. The addition of the word 'willful' to the language of the information did not alter the burden of the State to prove beyond a reasonable doubt every essential element of the offense with which the defendant was charged. Neither did it change the nature or identity of the of-

fense charged. 'It has been held in a variety of contexts that an amendment adding an ommitted [sic] allegation of a substantive element of the offense sought to be charged does not "change the offense." ' People v. Crosby, 25 Cal. Rptr. 847, 375 P.2d 839. A fortiori, the addition of a formal or nonessential allegation does not do so either. To treat the addition of the single word 'willful' as a substantive and critical amendment in this case exalts form over substance.

". . . We do not condone such procedure but we remain convinced that no substantial rights of the defendant here were prejudiced. We hold that the District Court, in its discretion, may permit a criminal information to be amended at any time before verdict or findings if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced." We believe what we said in *Gascoigen* is equally applicable in the instant case. The assignment, therefore, must be overruled.

We turn then to Last's second assignment of error. Last maintains that the statement she made to the police officer in the vending area should have been quashed because it was not voluntary and was obtained in violation of her constitutional rights and was made as a result of some improper inducement made by Soukup to her. We believe that, notwithstanding the argument made by Last, the evidence in the case simply will not support the claim. In the first instance, the statement made by Officer Soukup to Last was neither a misstatement of fact or law nor improper. The record reflects that all the officer said to Last was that if she was not involved she would be free to leave. That, of course, is the fact of the matter and would be true even if not said by the officer. Simply articulating what in fact is true cannot be made the basis of an improper inducement. Furthermore, the only statement per-

mitted by the trial court to be introduced in evidence was the first statement made by Last, freely and voluntarily made and not in response to any question submitted to her by Soukup. We have never held that a statement freely and voluntarily made by one in custody may not be offered in evidence simply because the individual, before making the voluntary statement, has requested counsel.

We have said, as has the U.S. Supreme Court, that once an accused requests the assistance of counsel, the interrogation of that individual must end. See, *State v. McNitt,* 207 Neb. 296, 298 N.W.2d 465 (1980); *In re Interest of Durand,* 206 Neb. 415, 293 N.W.2d 383 (1980); *Brewer v. Williams,* 430 U.S. 387, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977); *State v. Bridgeman, ante* p. 469, 323 N.W.2d 102 (1982). The protection afforded accused, once he has asked for the assistance of counsel, may thereafter be waived by the accused if done knowingly, freely, and voluntarily. As we observed in *State v. Pittman,* 210 Neb. 117, 119-20, 313 N.W.2d 252, 255 (1981), quoting from *Edwards v. Arizona,* 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981): " '[A]n accused, such as [petitioner], having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges or conversations with the police.'* (Emphasis supplied.) In *United States v. Grant,* 549 F.2d 942, 946 (4th Cir. 1977), the U.S. Court of Appeals for the Fourth Circuit held: '[*Miranda* does not] protect an accused, even though he has requested counsel, from a spontaneous admission made under circumstances not induced by the investigating officers *or during a conversation not initiated by the officers.'* (Emphasis supplied.)"

The evidence in this case establishes without question that the incriminating statement made by Last

to Soukup was not in any manner induced by Soukup or in response to any question put to her by Soukup. Not even an accused is precluded from seeking the emotional benefits of confession if done freely and voluntarily. The trial court was correct in concluding the statement was freely and voluntarily made. The assignment, therefore, must be overruled.

Turning then to the last assignment, that the trial court abused its discretion in sentencing the appellant to imprisonment rather than probation, we must likewise overrule. The sentence was well within the statutory limits. We have frequently held that in the absence of an abuse of discretion, a sentence imposed within statutory limits will not be disturbed on appeal. *State v. Irwin,* 208 Neb. 123, 302 N.W.2d 386 (1981); *State v. Wredt,* 208 Neb. 184, 302 N.W.2d 701 (1981). The granting of probation as opposed to the imposing of a sentence is a matter which is left to the sound discretion of the trial court, and, absent a showing of abuse, this court will not on appeal disturb the trial court's denial of probation. *State v. Jurgens,* 187 Neb. 557, 192 N.W.2d 741 (1971); *State v. Milligan,* 195 Neb. 493, 238 N.W.2d 906 (1976).

Having determined that there is no error, the judgment and sentence must be affirmed.

AFFIRMED.

WHITE, J., concurs in the result.
CLINTON, J., participating on briefs.